**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| INTERSTATE NATIONAL | : | |
| DEALER SERVICES, INC., | : | |
| | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:12-CV-4265-RWS |
| | : | |
| U.S. AUTO WARRANTY, LLC, | : | |
| d/b/a U.S. AUTO PROTECTION | : | |
| and RAY VINSON, JR., | : | |
| | : | |
|     Defendants. | : | |

## ORDER

This case comes before the Court on Defendant Ray Vinson, Jr.'s Motion to Dismiss for Lack of Personal Jurisdiction [13] and Plaintiff's Motion to Amend Its Complaint [19].  After reviewing the record, the Court enters the following Order.

### Background

This case arises from a dispute involving a Direct Marketing Agreement and a Direct Marketer Pass-Through Agreement between Plaintiff Interstate National Dealer Services ("Interstate" or "Plaintiff"), a Georgia company based in Atlanta, and Defendant U.S. Auto Warranty, LLC d/b/a U.S. Auto Protection

("U.S. Auto"), a company based in Chesterfield, Missouri. (Compl., Dkt. [1] ¶¶ 1-2.) The president and CEO of U.S. Auto at the time was Defendant Ray Vinson, Jr. ("Mr. Vinson"), a Missouri resident. (<u>Id.</u> ¶ 3.)

On or about April 19, 2011, the parties executed a Direct Marketing Agreement [1-1] whereby U.S. Auto marketed and sold vehicle service contracts ("VSCs") that Interstate administered. (<u>Id.</u> ¶ 9, 13.) U.S. Auto agreed to pay Interstate portions of the premiums it collected on the VSCs. (<u>Id.</u> ¶¶ 13, 16).

Parties also entered into a Direct Marketer Pass-Through Agreement [1-2] around the same time. Both contracts provided Interstate's Atlanta address. (Dkt. [1-1], [1-2].) Mr. Vinson signed the Pass-Through Agreement, while a different U.S. Auto official signed the Direct Marketing Agreement. (<u>See</u> Dkt. [1-1], [1-2].) Mr. Vinson was also the designated payee in the Pass-Through Agreement, meaning he could receive payments directly on U.S. Auto's behalf. (<u>Id.</u> ¶ 12.) Plaintiff characterizes these payments as "commission payments" that Interstate would pay for the VSCs U.S. Auto sold. (Pl.'s Mem. in Opp'n ("Pl.'s Opp'n Br."), Dkt. [20] at 5.) The Pass-Through Agreement also provided that Interstate could withhold from commission payments any amount

2

U.S. Auto owed to Interstate.  (Dkt. [1-2] ¶ 5.)  After executing the Pass-Through Agreement, Mr. Vinson provided Interstate with his personal bank account information and a W-9 form with his Social Security Number on it. (Pl.'s Opp'n Br., Dkt. [20] at 5.)  He later communicated by e-mail and telephone with Interstate employees in Georgia about the Pass-Through Agreement and directed Interstate to make electronic funds transfers into his personal bank account, which Interstate did.  (Id. at 4-5; see also Decl. of Brian Becker, Dkt. [20-1] (E-mail correspondence between Mr. Vinson and Interstate regarding commission payments).)

From April 19, 2011, until December 1, 2011, U.S. Auto sold VSCs across the United States, including to over one hundred customers in Georgia. (Decl. of Brian Becker, Dkt. [20-1] ¶ 5; Compl., Dkt. [1] ¶ 14.)  Interstate paid Mr. Vinson over $200,000 during this time pursuant to the Pass-Through Agreement.  (Id. ¶ 15.)  U.S. Auto, however, allegedly failed to pay Interstate all that it owed under the Direct Marketing Agreement, despite having collected premiums on the VSCs.  (Id. ¶ 16.)  Plaintiff also asserts that U.S. Auto violated the Direct Marketing Agreement by failing to issue refunds to customers who cancelled their VSCs.  (Id. ¶ 21.)

3

Interstate commenced this action on December 10, 2012, alleging state-law claims of breach of contract, breach of fiduciary duty, and conversion.  (Id. ¶ 27-42.)  Neither U.S. Auto nor Mr. Vinson have filed answers in this action. On March 7, 2013, Mr. Vinson filed a Motion to Dismiss for Lack of Personal Jurisdiction [13].  Along with its Response to Mr. Vinson's Motion, Plaintiff filed a Motion to Amend Its Complaint [19] on April 4, 2013, to add Vinson Mortgage Services, Inc. d/b/a/ Vinson Mortgage Group ("VMG") as a Defendant.  The Court turns first to Mr. Vinson's Motion to Dismiss for Lack of Personal Jurisdiction.

## Discussion

## I.    Defendant Vinson's Motion to Dismiss for Lack of Personal Jurisdiction

Mr. Vinson asserts that he is not subject to this Court's jurisdiction because he has not transacted any business in Georgia.  (Def.'s Br., Dkt. [13-2] at 8-9.)  Plaintiff argues that Mr. Vinson has transacted business in Georgia by personally executing the Pass-Through Agreement with Interstate and subsequently communicating with Interstate employees in Georgia by e-mail

4

and telephone regarding the Pass-Through Agreement.  (Pl.'s Opp'n Br., Dkt. [20] at 12-13.)

When a federal court sits in diversity, it properly may exercise personal jurisdiction over the defendant "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment."  Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999). Thus, the Court uses a "two-step inquiry in determining whether the exercise of personal jurisdiction over a non-resident defendant is proper."  Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009).  First, courts must consider whether the exercise of personal jurisdiction over the defendant would comport with Georgia's long-arm statute.  Id.  If so, courts then consider whether the defendant has sufficient minimum contacts with the state such that the exercise of jurisdiction would not offend Due Process notions of "fair play and substantial justice."  Id.  Finally, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).

5

However, motions to dismiss for lack of personal jurisdiction filed at the pleading stage should be "treated with caution" and granted only if the plaintiff has failed to allege "sufficient facts . . . to support a reasonable inference that the defendant can be subjected to jurisdiction . . . ." Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982). When considering a motion to dismiss for lack of personal jurisdiction, the Court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. In addition, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the Court must construe all reasonable inferences in favor the non-movant plaintiff." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (internal citations omitted).

A.      Georgia Long-Arm Statute

Mr. Vinson's business activities with Interstate satisfy the Georgia long-arm statute. Under the Georgia long-arm statute, "A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same

6

manner as if he or she were a resident of this state, if in person or though an

agent, he or she:

> (1)   Transacts any business within this state;

> . . . .

> (3)   Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91.  Mr. Vinson addressed sub-sections (1) and (3) in his Brief

(Dkt. [13-2] at 7-11), while Plaintiff only addressed sub-section (1) in its

Response.  (Dkt. [20] at 10-14.)  Additionally, because the Court has personal

jurisdiction over Mr. Vinson pursuant to sub-section (1), it is not necessary to

analyze sub-section (3).

According to Mr. Vinson, he executed the Pass-Through Agreement in

Missouri, he has "never visited Georgia in connection with any business with

Interstate," and, to his knowledge, he has "never communicated with any

employee or representative of Interstate in Georgia about the Pass-Through

Agreement."  (Decl. of Ray Vinson, Jr., Dkt. [13-1] ¶¶ 11-13.)  Furthermore,

Mr. Vinson argues that he executed the Pass-Through Agreement in his
capacity as the president of U.S. Auto and that the Agreement was "a
transaction between Interstate and U.S. Auto, not Interstate and Vinson."
(Def.'s Br., Dkt. [13-2] at 8.)  Either way, Mr. Vinson argues, "he did not do
any act or consummate any transaction in Georgia."  (Id.)  Case law points to
the contrary.

  "Interpreted literally, 'transacts any business' requires that the
'nonresident defendant has purposefully done some act or consummated some
transaction in [Georgia] . . . .'  That said, a defendant need not physically enter
the state."  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d
1249, 1264 (11th Cir. 2010) (citation omitted) (quoting Aero Toy Store, LLC v.
Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)); see also Amerireach.com,
LLC v. Walker, 719 S.E.2d 489 (Ga. 2011) (noting that physical presence in
Georgia is only one factor in considering whether a nonresident defendant has
transacted business under sub-section (1)).  Thus, courts consider "a
nonresident's mail, telephone calls, and other 'intangible' acts, though
occurring while the defendant is physically outside of Georgia."  Diamond
Crystal Brands, Inc., 593 F.3d at 1264 (citing Innovative Clinical & Consulting

AO 72A
(Rev.8/82)

<u>Servs., LLC v. First Nat'l Bank of Ames, Iowa</u>, 620 S.E.2d 352, 355-56 (Ga. 2005)).

By signing the Pass-Through Agreement with Interstate, a Georgia corporation, by receiving over $200,000 throughout U.S. Auto's performance of the Direct Marketer Agreement, and by following up via e-mail and telephone with Interstate employees who were in Georgia, Mr. Vinson transacted business in the state of Georgia. The fact that the Pass-Through Agreement was executed in Missouri is not conclusive, nor is his assertion that he never communicated with anyone in Georgia prior to executing the Pass-Through Agreement. The record shows that Mr. Vinson later communicated with Interstate employees in Georgia in his effort to receive significant commission payments from Interstate.

Mr. Vinson's argument that he did not sign the Pass-Through Agreement in his individual capacity does not exempt him from personal jurisdiction. In the context of individuals operating in their corporate capacity, "[t]he status of the individual defendants as employees or officers 'does not somehow insulate them from jurisdiction.' " <u>Amerireach.com, LLC</u>, 719 S.E.2d at 494 (quoting <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984)). The Georgia Supreme Court has

further held that individuals acting on behalf of a corporation may be deemed to have transacted business in Georgia "if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." Id. at 495 (quoting Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles, 87 F.3d 413, 418 (10th Cir. 1996)).

Assuming Mr. Vinson did execute the Pass-Through Agreement in his capacity as president of U.S. Auto, though, would nevertheless establish that he was a primary participant in the Pass-Through Agreement. The fact that Mr. Vinson was the designated payee in the Pass-Through Agreement with a Georgia company, coupled with his status as a primary participant in the transaction, his e-mail and telephone communications with Interstate employees in Georgia, and his receiving commission payments from Interstate, all demonstrate that Mr. Vinson himself transacted business in Georgia.

B.    Due Process Analysis

Having decided that the requirements of the Georgia long-arm statute are satisfied, the Court must now conduct a constitutional inquiry. The Court finds that exercising personal jurisdiction over Mr. Vinson satisfies Due Process.

10

Personal jurisdiction is proper if the nonresident defendant has established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

First, Due Process requires that a defendant must have established minimum contacts with the forum state such that he has fair warning that he could be haled into court there.  Diamond Crystal Brands, Inc., 593 F.3d at 1267.  "[T]he fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)) (internal quotation marks omitted).

Mr. Vinson's business relationship with Interstate established the necessary "minimum contacts" with Georgia such that he reasonably should have anticipated being haled into Court here.  While he was president of U.S. Auto, his company entered into the Direct Marketing Agreement with Interstate,

11

a Georgia corporation.  More significantly, he signed the Pass-Through

Agreement with Interstate, which was formed in conjunction with the Direct

Marketing Agreement, and chose himself as the designated payee to receive

commission payments.  Mr. Vinson then "personally requested and inquired

into the status of wire transfers between Interstate and Mr. Vinson's personal

bank account" through e-mail and telephone communications with Georgia

residents.  (Pl.'s Opp'n Br., Dkt. [20] at 13.)  Finally, Mr. Vinson received a

significant sum of money from Interstate.  Mr. Vinson thus established

minimum contacts with Georgia such that he reasonably should have

anticipated defending suit here, and these contacts are clearly related to

Plaintiff's claims.

Second, to determine whether the exercise of jurisdiction comports with

traditional notions of fair play and substantial justice, courts examine:

> the burden on the defendant, the forum State's interest in
> adjudicating the dispute, the plaintiff's interest in obtaining
> convenient and effective relief, the interstate judicial system's
> interest in obtaining the most efficient resolution of controversies,
> and the shared interest of the several states in furthering
> fundamental substantive social policies.

12

<u>Diamond Crystal Brands, Inc.</u>, 593 F.3d at 1274 (quoting <u>Burger King Corp.</u>, 471 U.S. at 477) (internal quotation marks omitted).  A defendant challenging personal jurisdiction must make a " 'compelling case' that exercising jurisdiction would be constitutionally unfair."  <u>Id.</u>  Mr. Vinson has not made such a showing.  In fact, he did not address any of these factors in his briefs. The Court therefore finds that exercising personal jurisdiction over Mr. Vinson is fair.

Because Mr. Vinson transacted business in Georgia and established minimum contacts here such that exercising jurisdiction over him would comport with fair play and substantial justice, Mr. Vinson's Motion to Dismiss for Lack of Personal Jurisdiction [13] is **DENIED**.

## II.     Plaintiff's Motion to Amend Its Complaint

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the

AO 72A
(Rev.8/82)

written consent of the opposing parties to amend.  Rule 15(a)(2) directs the

Court, however, to "freely give leave when justice so requires."  Despite this

instruction, however, leave to amend is "by no means automatic."  Layfield v.

Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).[1]  The trial court

has "extensive discretion" in deciding whether to grant leave to amend.

Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court

may choose not to allow a party to amend "when the amendment would

prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile

if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis

Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v.

Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying

"inadequacy as a matter of law").  That is, leave to amend will be denied  "if a

proposed amendment fails to correct the deficiencies in the original complaint

or otherwise fails to state a claim."  Mizzaro v. Home Depot, Inc., 544 F.3d

1230, 1255 (11th Cir. 2008).

---

[1] In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

In its proposed Amended Complaint [19-1], Plaintiff attempts to add a new party, Vinson Mortgage Group, on the theory that Mr. Vinson, Interstate, and VMG operated as alter egos of each other and were joint venturers.  Under Georgia law, to prevail on the alter ego theory "it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist."  Baillie Lumber Co. v. Thompson, 612 S.E.2d 296, 299 (Ga. 2005) (quoting Heyde v. Xtraman, Inc., 404 S.E.2d 607, 610 (Ga. Ct. App. 1991)).  A joint venture is established "where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other."  Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997).

Plaintiff supplies conclusory allegations in its proposed Amended Complaint that amount to a formulaic recitation of the alter ego and joint venture elements.  Such conclusory allegations in a complaint "will not do." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (requiring a complaint to

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))).  Plaintiff alleges, for example, that "U.S. Auto, Vinson, and VMG are alter egos of each other" and operated as "business conduits of each other." (Dkt. [19-1] ¶¶ 79-80.)  Without providing any other facts, Plaintiff alleges that U.S. Auto, Mr. Vinson, and VMG "are jointly and severally liable for the liabilities of each other."  (<u>Id.</u> ¶ 82.)  Plaintiff's joint venture allegations are just as conclusory.  (<u>See</u> <u>id.</u> ¶¶ 84-89.)  Plaintiff makes no factual allegations in the proposed Amended Complaint that would support its additional claims.

Because Plaintiff's proposed Amended Complaint fails to state a claim as to the alter ego and joint venture allegations, Plaintiff's Motion to Amend Its Complaint [19] is **DENIED**.

## Conclusion

In accordance with the foregoing, Defendant Vinson's Motion to Dismiss for Lack of Personal Jurisdiction [13] is **DENIED**, and Plaintiff's Motion to Amend Its Complaint [19] is **DENIED**.

16

**SO ORDERED**, this  11th  day of September, 2013.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)